Good morning, Your Honors, and may it please the Court, I'm Aaron Maddox and I am here on behalf of Edwina Fields. A jury awarded $240,000 in compensatory and punitive damages in this case. Nobody objected to it at the time. The district court entered the verdict, dismissed the jury, and thereafter the defendant filed a motion to vacate under Rule 49B based on confusion it alleged in the special and interrogatory answers. Now, for dealing with a general verdict here, under Stancil v. McKenzie, it was waived. The district court didn't have jurisdiction in the first instance. Stancil states, a new trial as to any issue would be inappropriate for a third reason. By failing to object to the form of the verdict and answers at the time they were announced by the jury, both parties waived any objections to inconsistencies under 49B. That's found at 497 Fed Second 529. It's the end of page 534. So, what was the case? That was Stancil v. McKenzie, 5th Circuit, 1982. It is the end of page 434. One word goes on to page 435. So at that point, it's been waived. The district court did not have jurisdiction to reconsider the verdict, and there's a good reason for it because 49B sets up a situation for us where if there are inconsistencies or apparent inconsistencies… You made that argument in your briefs here. We did. And if there are apparent inconsistencies under 49B, the first thing that you have is the effort by the district court to reconcile the verdict, and it must do that. If it is unable to do that, it has the discretion to turn to the jury and say, I want you to try and clarify this. Now, we do have a dissent in the Firestone case where there is some pressure on the jury that is of concern, but under 49B it has that discretion, and the majority in the Firestone case, Richards v. Firestone, says that they do. The problem is that if the jury has been dismissed, the district court judge can't turn to the jury and say, please clarify for us, and that's wrong. Are you saying that they forfeited this error by failing to object? Is that what you're saying? Yes, and that is an adjustment from our reply brief. And you're saying that that's clear under our authority that this error is forfeited by failure to object at the time the verdict was returned? By failing to object to the form of the verdict and answers at the time they were announced by the jury, both parties waived any objection to inconsistencies under 49B. That is Stansel v. McKenzie. But don't you also have the argument that it's not inconsistent? I thought that was your main argument. It was our main argument, and I still think that that's correct, Your Honor. In the response brief, the defendant took up this issue about general verdict, and that's where I found this and said, wait a minute. I'm a little bit confused, and I have to confess that I've not worked with special verdicts before. So I've had a little bit of confusion here in trying to sort this out. But I do believe it is absolutely consistent under 49B, and it's consistent with the law. And there are two issues that are sort of competing. We have said the issue here is the 49B analysis, and I still think that it is. The defendant has argued that what we have here is a challenge to the jury instructions. If the jury had come back with a defense verdict in this case, then the defendant would be absolutely right. We're challenging the jury instructions. It is clearly a misstatement of the law when you look at the jury instructions themselves. What the district court did— What's a misstatement of the law, that they don't—that they predicate No. 15 on a yes answer to No. 14? Exactly, because the—and I didn't catch this originally, but what the district court did was to take the pattern Fifth Circuit instruction that was correct and change it. By adding that B in there, that B being you have to instigate, endorse, or encourage the conduct. And that's not an accurate statement of the law. What I looked at on that is— But now you did forfeit that error. I mean you forfeited making that argument that it was an error on the instructions when you didn't object to the time the instructions were given. No, we did not. Because you can object to the instructions that the defendant has said under clear error standard, even if it's not been objected to. And it is a clear error. But because the jury came back with a plaintiff's verdict, that is really the issue. You're saying this is plain error under our Jimenez en banc? Under Wehmeyer. Because we're talking about a prison context here. No, but I'm talking about a plain error in the jury instruction. So you're arguing alternatively that any error is forfeited on either side, that there is no error, and that the error is plain. I'm just trying to make sure I got all your arguments. There are some subsets here, Your Honor. I'm really trying to look at the alternative because I do believe that the issue here is the district court's handling under 49B. Because the jury came back with a verdict awarding $240,000 in compensatory punitive damages, that's where we're going. That's where the issue is. Have the jury come back with a defense verdict. Okay, let's just – what is your argument here? Number one, if we're dealing with a general verdict, it's waived. Number two, it is absolutely consistent because the jury could have answered yes to interrogatory 15 and been consistent with the law. But it didn't. But it didn't. It left 15 blank. Is that right? Because the court directed it not to because of a court error. We have typos in court errors all the time. If the court had done it correctly – Okay, but you didn't object to the jury verdict form when it came out.  The jury came up with the correct answer. Why would we object? Okay, but is number 19 – I thought your argument was that number 19, that says that the defendant was with malice and reckless disregard, could be read in conjunction to find that if they're with malice and disregard, of course they didn't fail to take prompt remedial action. No, of course they did fail. Yeah, that they did fail. So that 19 covers up for the fact that 15's not answered. Yes, 19 tells us what the jury intended because that's the goal here. To me, the case is fairly simple. The court instructed the jury that there was an element that it had to find in order to return a verdict for the plaintiff. The jury did not find that element, in fact, rejected the fact that the element had been established. That's – and then that is the end of the case. When it returns a verdict for a certain amount of money for a cause of action that it says doesn't exist. And then we have this stupor of words coming in here to try to justify and explain what is very plain and simple on the face of the verdict. Respectfully, Your Honor, it isn't because what the jury did was to get the law right, even if the court didn't. Because if you go with that, you've got a very clear – the jury corrected it. The jury knew that this defendant was liable because it acquiesced. As I understand the argument, I understand your argument is that although the verdict on its face is inconsistent, it can be explained because this was a state agency that you were suing for, and punitive damage should never have been part of the interrogatories, which means that the jury had to find the defendant failed to take proper remedial action. And because the jury found that the defendant knew that the plaintiff was being sexually harassed by the inmates and because the punitive damage question that never should have been asked is answered – the defendant answered with malice and reckless disregard translates into a positive yes that never happened. Now, if that's not a stupor of words to try to explain what is absolutely clear on the face of the verdict, I've never heard it. Your Honor, it's not – I do believe that the verdict gives us clarity that the jury found liable. The jury said we are awarding damages. That is a finding of liability. I concede to you – I concede that you can't have a verdict that says we find damages and no liability. But you can have a verdict here that finds liability because the jury has found – Well, if you take that jury verdict, turn it upside down, shake it four or five times, tie it in three or four knots, you can get the result you want. I don't think so, Your Honor. But if you just read it like it is, you can't get it. That's just my view. I respect that, Your Honor, having said that. That's just one judge. If we read it like it is, the jury had to have found liability. There is a way for the jury to find liability if the district court had not directed them not to answer interrogatory 15. The only way we come back and say the district court was right there is if we allow the district court to change the law against the Fifth Circuit in Wayminer. This circuit court has been very clear. But you didn't object to it. You didn't object to the mistakes that you say the court now made. The reason we didn't object is because we already had a verdict. Yeah, but you had a verdict, but you didn't object to the form of the verdict that now you're arguing is the only way that you can get. The verdict is by the mistakes of the court to which you didn't object. No, Your Honor. Forgive me. We don't have to object when the jury comes back. If we've won at that time, we've won. There's no reason to object. The person to object is the defendant who says there's an inconsistency. So regardless of whether you should have objected at the time of the charge conference, your position is that because no one objected at the time the verdict was announced and the verdict was accepted, that the verdict stands. Absolutely. That's what stands. That's what you're saying. What is part of the verdict? Part of the verdict is liability. And that was not established. You got the money, but you got the money without liability. The money is the verdict. It's all there. If you want to come down and say we have no liability of objection to the plaintiff. I mean the amount of money is the award of the verdict. It's part of the verdict. Sure it's part of it, but so are the interrogatories. And that stands. We have the interrogatories the way they are and they stand. Now I can come back and tell you why that verdict is consistent because the defendant has given us the wrong law because the defendant didn't read way minor. So is it your position that because the jury found that the defendant should have known that she was being sexually harassed and that they acted, the defendant acted with recklessness and malice that the defendant is liable? Is that you need to put those two together or is the fact that they should have known? Here's the thing, Your Honor. It's that they should have, they knew. We have that positive answer to interrogatory 13. And we have in the record a failure to take prompt remedial action. We have acquiescence. We don't have an answer to that question, but we know what the answer is because the jury in finding that they acted with reckless disregard had to have found that they did something wrong, that they acquiesced. You can't come back and say you were malicious and reckless in doing nothing wrong. That makes no sense. But that's not the question, whether they did something wrong. The question is whether you proved all of the elements of your claim to support the award. That's the claim, not whether they did something wrong or not. Maybe they did something horribly wrong, but they failed to commit the one element that is necessary for liability. That's my point. I understand that, but you didn't object to that either. That is clear error, and we didn't have to object, as I said, because we already had the verdict. Because you're saying encourage, endorse, or instigate is not an element, and this verdict doesn't actually say encourage, endorse, or instigate. It's an element. It's just asking that. That's one method by which you could be liable. They could be liable. I think that's correct. I think the law says that yes. So you asked both questions, and so if they did either, but you're still left with you don't have an answer to the alternative question. That's an error by the court, but we know what the answer is. Your Honor, it is our view that we didn't have to, but let me accept your view for a moment. Okay. All right? It is still clear error. At that point, the defendant is right. This is a clear error argument, and it is absolutely clear error. I know I'm short on time, but I can point out to you where the error is. The defendant, on page 13 of its brief, quotes out of Ramire. It says, nonetheless, the circuit has acknowledged that the general disinclination to liability is not without any limits by offering that, quote, this general rule against prison liability for inmate conduct does not apply when the institution fails to take appropriate steps to remedy or prevent illegal inmate behavior, unquote, citing Wehmeyer v. Harris. I read Wehmeyer several times. It's not in there. I couldn't find it. It finally hit me. That quote is coming out of Slayton, in which the Sixth Circuit comes back and doesn't take a direct quote but says Wehmeyer says that. If the defendant had read Wehmeyer, Wehmeyer gives five elements, and those five elements do not include instigate, endorse, or encourage. That would be a violation of Ellerith and Farragher. That would be a violation of Wehmeyer. That would be a violation of the EOC guidelines. That would be a violation of the Fifth Circuit jury instructions. But now how does that work to your advantage? I mean conceding that you're correct about that. Then that's clear error in the point that you've just made, Your Honor, which I'm accepting. I disagree with, but I'm accepting. At that point, what you're saying is there's a clear error here, and we have to send it back, although I don't think we need to send it back because I think the jury told us where we'd go. But remember that under 49B… But we'd have to send it back for another trial? Is that what you're saying? Right, because under 49B, remember what the opportunities are. You make an absolute concerted effort to reconcile. If you're unable to, you can turn it and send it back to the jury, or your third alternative is a new trial. That's all that your alternatives are. Okay. Well, you've made a very spirited and a very effective argument. Thank you, Your Honor. You're welcome. We'll call now Mr. Cody. Good morning, Your Honors. Judge Jolly, you said it better than I think I can just a moment ago. I think it was something along the lines of if you take the verdict of the jury and you shake it up and you tie it in some knots, you can get the result that you want. And I think that's exactly what Plans Council is attempting to do here. Essentially, what this… But in a way, I mean you didn't object. I mean you don't come into the court faultless because you did not object at the time that the verdict was returned, and that would have been the time to object, it seems to me, so as to prevent all of this mess that we have now. Your Honor, what I can speak to is that under Rule 49B, I think this case is where you have jury instructions – I'm sorry, jury interrogatories rather – which are consistent but then inconsistent with the general verdict. And like you said a moment ago, really the general verdict, however, boils down to you have to have liability and you have to have damages. I mean it's first-year torts. What Plans Council would like to suggest is that, well, it's really just the number. Whatever the number is the jury assigns, that's the verdict, and they won the day, therefore good for them. But like you said, how do you support a finding of damages when it's clear that they have not met their burden on liability? What are the consequences of your failure to make a timely objection when the verdict was returned? Your Honor, I don't think that it's fatal. I think that under Rule 49B, I think that we timely were able to bring a motion to vacate the jury award. Do you have a case that says you were timely as opposed to not timely? Your Honor, unfortunately, I do not have something before you today to cite to that. I mean that seems to me crucial to you because if you had timely objected, then the court could have corrected its error. The plaintiff could have either had its money or not had its money, and you wouldn't be on appeal. But it was not until sometime – how long was it before you finally realized that the verdict was inconsistent, that the verdict was inconsistent? Your Honor, after conferring with co-counsel and getting together and discussing it, we realized we think we have an option to file the motion that we filed, and we filed it timely. That day while the jury was still in the box? Before they'd been released? Your Honor, the jury had already been released. So if it had been done timely, then the court could have asked additional questions or sought clarification from the jury, and that's why they have the rule like that. Your Honor, but I have to ask, when you have a situation like this, what is the judge going to instruct the jury exactly? I mean you have specific findings on specific jury interrogatories to reach a result. The jury entered – we give the jurors the law, we give them the juried interrogatories. We ask that they – they're not jurists. They're laypersons. They go and they do the best they can. Right, but if they realize that the charge is messed up at that point, then they can ask a new question. You get the counsel to agree that the charge is messed up, and then you . . . Well, I don't think the charge is messed up. No, the form – well, in Texas, we call it all the same. It's all the verdict form, and the instructions are all one little vote. So you could get them to – the court to ask a subsequent – ask them to answer that question that they didn't answer. Either way, not predicated, and so you got the answer to the question, and then y'all can haggle over what the answers mean. I mean there are a lot of things the court could have done had it known timely. Your Honor, I don't buy into plaintiff's counsel's argument that the predicate was set forth incorrectly, and therefore you had to go to question 15 even if you answered negative to question 14. I don't agree with that statement. You believe you have – as a matter of law, you had to both encourage and instigate and fail to take prompt remedial measures? Well, I think – and going to that, this is where we touched on the weak case in our brief. And the weak case, I think, is essential because that was the standard that was set forth whenever – when we got to trial, the judge cited verbatim the quote there, which established that in the Fifth Circuit there was not clear law. However, after doing a survey of various other circuits and determining what standards had been applied, came up with that language that was fashioned and then put into the jury interrogatory. As you stand here today, what do you believe the law is in this area on this point? I think the law is as it was represented in the jury verdict forum. Then you have to have both points. Well, the way you said it a while ago, this is the thing. I mean claims counsel had stated the five elements, I think, generally for a sexual harassment claim. In the context of a general – where you have an employer acting upon an employee or a coworker acting on another employee or that sort of thing, this is a special case where you have – Where you've got prisoners, do you believe you have to encourage, instigate, or what's the third one? Endorse. Endorse or else you're not liable. Do you believe that, that that's the law? Your Honor, I – It's not a trick question. I think it is. I think it is. And I think also – It is a trick question? No, I'm sorry. I think that is the case, that you have to find those things before proceeding onward. Okay, so you think that under the law, the law is that you have to encourage, endorse, or instigate, and that without an affirmative answer to number 14, they lose. You do not proceed to 15, then, to ask the next question. Okay, so you don't believe the predicate's wrong at all. So what authority do you have that that's – you believe Wheat says that that's the law? Your Honor, that's what I said. That's real shaky, isn't it? I think Wheat says that. I think that there was nothing – directly to the contrary in the Fifth Circuit. The district court in the Wheat case did the best they could to do a survey of what the case law appeared to be from other circuits, presented its view. That was adopted by the district court here. And what's more important, I think, is since the Wheat case came out, Judge Jolly, back in January, you ruled on the appeal of that decision. And what's interesting is the Wheat case, that particular claim relating to inmate sexual harassment, it was dealt with in footnote, footnote 5. You found no fault with the ruling. So I think the takeaway from that is that that was not an incorrect statement of the law. Had it been, I think maybe that would have been an opportunity for the court to then address that issue and say, no, look, district court, in the Wheat case, you got it wrong. This is actually the elements of the – But this is a prison. This is an unusual case in terms of sexual harassment and that sort of thing because it is the prison, the prison setting, and you are assigning to the prison authorities the conduct of the individual prisoners. That is correct. And so – I'm sorry. Well, I'm just saying that it's a little harder to prove. It should be a little harder to prove in an ordinary case. And I agree with that. I agree with that wholeheartedly, and I think that that's why when you made the ruling in the Wheat case and the appeal back in January, you didn't find any fault with what the eastern district had done in the case below because it is a different – it is a different situation when you're talking about the prison environment. There need to be steps. But our case here is supported by that too because there was a policy in place that said, okay, guards, if they commit sexual harassment, you need to widen up. It seems to me that it's too late to object about the instructions at this late date. But the thing that I would want to ask you is about – is this issue of your failure to object been raised by the other side at this time, the failure to object at the time the verdict came in? Your Honor, I don't think it's been raised until we've gotten to this level, to the appellate level. I don't think that there's ever been – In other words, they waived the objection. Would your argument be to the matter that we've been discussing about the failure of you to object? They've not raised that themselves. By not raising it, I would say they've waived it, Your Honor. And going back to what you said a moment ago about the unique context that we're talking here, a prison environment, I think just to note in Wheat what we were talking about there was a guard that was being sexually harassed by a juvenile offender. Of course, like here, she had raised several, several different allegations, various claims that were to be addressed. But be that as it may, the Eastern District got it right, I think, in setting forth what the standard of liability was. And, again, you didn't find fault with it, and I think that's a correct interpretation of the cases and everything on point with how you are to look at that in the prison context. If we were talking about just your guard variety, employment setting, I think that you're right. You would have to meet those certain thresholds. They would be crafted differently than here. But because we're talking about a prison environment, they come into the situation knowing you're going to have these sorts of instances of inappropriate conduct. You're going to have inmates that are unfortunately exposing themselves, as what happened here. You're going to have lewd comments being made. Especially in a male prison, you're going to have female guards that are going to be exposed to that probably more than the men. And it's unfortunate, but I think that's a reality that I think anybody going into this situation realizes. It's not something that they're suddenly surprised after being there for a few months. And just to note, Ms. Fields was here for years. She was here for just a number of months. You can't fire the prisoner for engaging in sexual harassment like you can an employee. You're right. I didn't say you were fired. Now get out of the prison. You can fail to take prompt remedial measures. I'm sorry? You still have a duty to take prompt remedial measures, and you can fail to do so. And that can trigger liability, apart whether you endorse the conduct. In the prompt remedial measures, Your Honor, I would submit that boils down to the policy being in place, which it was, and whether or not the person has done what they're supposed to do, meaning to file these Rule 21 violations. We have testimony in the record that backs this up. Ms. Fields just suddenly stopped doing it. She stopped doing it. Now she alleged, and the jury did not agree with her, that her supervisors had told her not to do it anymore. That was a finding, a specific finding in the jury interrogatory. Can I ask you a question about number 19, please? Is that the? The malice, the punitive damages. I have a question. In Carr, Carr says we're supposed to harmonize the entire verdict. And while you would argue that you could predicate the punitive damages questions and you shouldn't even have to answer them, they did answer the punitive damages question. And they found that your client acted with malice or reckless disregard. How do I harmonize – how does the court harmonize that and still come to the view that there's no liability on your client's part? I think, Your Honor, just the way that the trial court did it. The trial court looked back in the record, noted that mistakenly by counsel, by the judge – I mean the ruling dismissing the punitive damage claim happened over two years before the thing went to trial, the matter went to trial. I mean your answer to that question is it doesn't matter whether the jury thought they did wrong, acted with malice or whatever they acted with. They did not satisfy the requirements and instructions of the jury to find a cause of action. And that is correct, Your Honor. You can't return – you can't just say – to put it up to the jury and say, did you do right or wrong? And I think that's right. I mean essentially there can be no harmony in that. Well, look, I'm trying to harmonize. And so can you try to harmonize? I understand Judge Dali thinks it's just an anomaly, but Carr tells us we have to try to harmonize. So could you try to harmonize that? Well, just by its very nature, again, I mean – Thank you, Judge Dali. That's lovely. I'm sorry. Just by its very nature, I mean punitive damages would assume that you first meet the predicate of finding some liability. Again, here you don't have that because there was no liability because they did – the way they answered the questions, it's clear. They didn't get to the – a plaintiff wants to assume an answer to something that was never asked. That's what it boils down to. How can you put that on the jury that they found something when that question never went to them? Well, they found malice and reckless disregard. But again, cart before the horse, they should not have done that. But they did. They should not have done that essentially. But we're stuck – if they shouldn't have done that, they think they shouldn't have done – skipped the one about prompt remedial. All these things they shouldn't have done, they did do, and so we're trying to harmonize it now. And again, I would just have to agree with what Judge Dali said a moment ago. Smart. So I just have to say, I mean I think you can't do that in this circumstance. I think it's just one of those inconsistencies that despite what Carr instructs, I think you can't find that harmony. I think you have to – and you have to take it into light, the fact that these are jurors. They're not lawyers. They're not judges. They do the best they can. We equip them with the law. We explain them in the instructions what they're supposed to do. I think the instructions are clear here that you have to find, as Judge DeGravelle had said in the instructions, you have to find all the elements before – or you can't award damages. Counsel? Yes, Your Honor. As I understand your position and Judge Jota's position, the Seventh Amendment requires that we decide the issue here that we're talking about strictly and only by looking at the answers to the special issues. Is that the Seventh Amendment law? If I understand you – so you were saying the Seventh Amendment requires that you look only at the – I'm sorry. You give the meaning to what the jury's done as we're trying to decide here by looking only and strictly to the special issues in the verdict and the findings. Is that it? Well, I'm looking at Judge Jolly for some instruction possibly, but let me – I would just say that I think – Judge Wisdom said one time – the lawyer says to Judge Wisdom, well, now, what do we say about that, Judge? Your Honor, I think that's a very good question. I think I'm ill-equipped to answer that wholeheartedly, completely today. But I think that what it boils down to here is, I mean, you don't do anything against the Seventh Amendment by simply saying, like in – to harmonize the verdict, sure. Say you had a case where you had considerable proof, maybe some on both sides, but you did have considerable proof supporting the plaintiff's claim that when these people, officers in the prison system, saw what was transpiring and what she was having to put up with, they didn't do anything to urge the prisoners to do it anymore, but they did not do anything to stop them either. And so that was a – the argument was maybe they instigated it, but also, if they didn't instigate it, that they didn't remedy the situation that they knew about and could have. And can you look at what the case has been and what the jury was told the law was and say that gives us the meaning of what the jury has decided? Which do you – Well, and I think what you mentioned as far as – Don't change my hypothetical.  But under the heading of encourage, endorse, or instigate it, that type of behavior you just explained would fit under that. I mean that would be essentially an endorsement of that behavior, and that was what went to the jury in this case. Well, the law is very clear. These are two separate claims. She had two separate claims, one that they instigated it, and also they let it go on without remedying it. You're talking about in the – Your case. In my case that they had to meet either one or the other, and I agree. I mean you have to either – No, no. I'm sorry. She had a claim they were doing both. She lost on the instigation, and then the judge doesn't ask about the remedy. It just didn't ask about it. The instigation, as I understand it, that you're referring to would be that of possibly moving the desk in a way to accommodate the inmates. Is that what you're referring to, I think? Whatever it was. And the jury specifically – There are two different ways to make a claim of liability in this case. One, they took more responsibility themselves, the officers. They did things to encourage what the prisoners were doing. The other is they just sat there. They didn't do anything except sit there and let it go on. Your Honor, I think both of those scenarios are not supported by the record, meaning that neither did they just sit idle nor did they actually do anything to instigate it. I think the record bears that out. We had lots of testimony in the record. The only thing – All right, maybe they didn't sit idle, but they didn't remedy what they could have done. Well, but again, Your Honor, I think that they did remedy under the circumstances. I mean it's incumbent upon a guard – They did remedy. That's the – If a guard has an issue with an inmate, she has an instruction in her – I mean it's part of her duties to inform them of it. If she doesn't write the person up, they can't go ahead and they can't then do something to discipline that person, which would have the effect of curbing the behavior. It's different from a situation – well, okay, should they do something, and it's not supported by that, then you have – I don't think you're on my – I don't think you're responding to my question. And I apologize if I'm misunderstanding. Well, can you make something to help you decide this question by looking at what the damage issues were found to be and put that all together with the two different claims and what the court told that jury to begin with about the not remedying what they knew or should have known? Not that they had to find this, but to tell them what the law was. You can't put all that together and say, well, the Seventh Amendment would require giving effect to that jury to give them $120,000. Your Honor, I don't think that – I'm sorry. You're going to disagree with that. The answer to that is, yes, you could do it if you wanted to put three appellate judges in the jury box. Well, good point, as always, Judge Charlie. Or follow the Seventh Amendment, either one. I don't – the Seventh Amendment doesn't say anything about special interrogatory. It says you look at your charge as well as the findings. And just what I would say to that is the case is cited in support of what the judge did here on the motion to vacate the jury board and show that it lives or dies – the ruling – the award lives or dies based on whether there's liability, whether those questions were answered the correct way. I think that that scenario still fits under what the Seventh Amendment requires. Okay. We have your argument, Mr. Cote, and it saves some time for rebuttal, Mr. McGaugh. I appreciate it. He's had a rebuttal. He's had his rebuttal now. Thank you, Your Honor. You're welcome. If I may. First thing, the defendant has said that we never raised the waiver issue in the briefs. I turn your attention to page 15 of our reply brief. This court in Mercer v. Long, citing Costanzo v. McKenzie, differentiated between the waiver argument where the court used a general verdict as opposed to a special verdict. Where Stancil involved a general verdict, it therefore removed 49B. The objection was waived. We did raise it in this appeal. It is here. Second. What page is that on your brief now? It's page 15 going into page 16. In the reply brief? In the reply brief. In the reply brief. Yes, Your Honor. That's when they raised the question of the special verdict, and we responded and said, hey, it's been waived. Second. The defendant has said that there's nothing in the record that they failed to—that because she failed to make the Rule 21 violations, there's nothing in the record to support it. Number one, she testifies that she was told not to do the Rule 21 violations. But number two, the answer to Interrogatory 13 tells us that the jury found that she did. Interrogatory 13. Did the defendant, Department of Public Safety and Corrections, know or in the exercise of legal care should have known that plaintiff Edwina Fields was being sexually harassed? Answer, yes. So it's there. It's not just that it's in the record. The jury found it. That's there. Third item. Wheat. We're going back to—Wheat does not give us the elements. Waymire does. And Waymire on—well, it's Head Note 5 on page 428 states, to state a claim under Title VII, and it lists out five elements. And the fourth element is that the harassment affected a term or condition of employment, and the fifth is that the employer knew or should have known and failed to take proper remedial action. Where Wheat goes, and where I think, Judge Shelley, you went in Wheat, is that where we have to find that the harassment affected a term or condition, we've got to use an objective standard. Look, as an objective standard, if you are in a symphony orchestra, you've got a different view of what you're expecting. If you're in a prison, now these things are going to happen. So objectively, does it affect a term or condition? In this case, we know that the jury found it did because the answer to Interrogatory 12 was that the prisoners harassed her. But that's where this elevated standard kind of thing, because it's prisons, comes into play. If we were to come back and say, hey, we're going to require instigation, and then you can just let it go and ignore it, what kind of standard is that set? Let's go to the gentlemen's clubs. We can get rid of the bouncers because if a patron grabs a cocktail waitress, well, you know, this is a gentlemen's club, so we can expect it. We don't have to pay those bouncers. We can go to a hundred things. We can go to locker rooms. We can go to boilers. We can make exceptions for Farragher, Elliott, and even for the Fifth Circuit pattern instructions themselves. And we can accept that in all kinds of cases. But Waymeyer's a prison case, and it doesn't make the exception. Waymeyer is a prison case, and it says that the element is that the employer knew or should have known and failed to take proper remedial action. There is no exception. There's no exception in a prison case under Waymeyer. There's no exception under the Fifth Circuit pattern instruction until the judge changes it. And there's no exception under Elliott or the EEOC guidelines. This is clear. This is what the law is. I know, but you found out what the law is too late because you didn't object to the instruction. There's a clear error doctrine. You have a clear error here. You have a clear violation. And the waiver, the waiver is the defendant's.  $240,000 against him. That was the time to make the objection so that the court could turn to the jury and send it back and say, hey, but here's the end result, the final point that we have to look at. What are our three options? Option one, under Griffin, we must find a way to reconcile if it's at all possible. I believe I've given you one. Two, the judge could, if he can't reconcile it, send the jury back and ask them to explain what they mean. Or three, the judge can order a new trial. So if we really come down to the point where because they didn't make the objection at the time, we're left with an inconsistent verdict, which I don't think we are, then you're left with ordering a new trial. And I don't think it's necessary because the jury has told us. They found this defendant culpable, liable, malicious, and in reckless disregard, and we can see why. They failed to address it. They acquiesced. So we know what the answer is going to be. We don't really need to send it back for a new trial, but that's the alternative. Okay. Thank you, Mr. McDuff. Thank you. Yes, sir. Thank you.